UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD ADAM ROBERTSON,

        Petitioner,         Case Number 16-11422
                                              Honorable David M. Lawson
v.

STEVEN RIVARD,

        Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Reginald Adam Robertson pleaded guilty to carjacking, robbery, assault, and firearms offenses. After he was sentenced to prison and his state court appeals yielded no relief, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Robertson argues that the trial court erred by accepting his guilty pleas without making an adequate inquiry into the breakdown in his relationship between him and his court-appointed attorney. Because Roberston has not shown that the state courts disposed of his claims in violation of federal law, the Court will deny his petition.

I.

Robertson was charged with numerous felonies arising out of five different carjackings that had taken place in Detroit, Michigan. His attorney negotiated a plea agreement with the prosecutor in which three of the cases would be dismissed and Robertson would plead guilty in the remaining two cases to two counts of carjacking, two counts of armed robbery, one count of felonious assault, and two counts of possession of a firearm during the commission of a felony (felony firearm). The parties also agreed that Robertson would be sentenced to four concurrent sentences of 9 to 20 years for carjacking and armed robbery.

Robertson initially rejected the plea offer and expressed a desire to go to trial. After a recess in the plea hearing, the parties announced that Robertson decided to plead guilty. Robertson was sworn in and informed the judge he had signed the plea forms. However, when the judge asked him whether he was satisfied with his attorney, he replied "No, not really." Hrg. Tr. at 17, ECF No. 10-8, PageID.310. When the judge asked Robertson to explain, the following exchange took place:

> MR. ROBERTSON: I'm going to tell you the truth, like I wrote you in the letter, I'm not going to lie, I took the plea. But there's been a breakdown between me and Mr. Parker since I met him as my lawyer. He just started working on my case. There's no point for me to go to trial and lose.
>
> THE COURT: Well, we've had many pretrials in these matters, and Mr. Parker was present when he argued the motions in this case.
>
> MR. ROBERTSON: I know.
>
> THE COURT: And you know, he's one of the most experienced attorneys in this county in criminal defense. So, you know, you don't have to go forward with this, we have trials set up.
>
> MR. ROBERTSON: That's what I want to do?
>
> THE COURT: You don't want to plead?
>
> MR. ROBERTSON: I'll plead.
>
> THE COURT: So you want to go forward?
>
> MR. ROBERTSON: Yes, Ma'am.

*Id.* at 17-18, PageID.310-11.

The judge informed Robertson of the maximum penalties for the offenses to which he was pleading guilty. The judge also advised him of the rights that he would be giving up by pleading guilty. Robertson specifically stated that he had not been coerced or threatened by anyone into

pleading guilty. After admitting to the factual basis for his crimes, the judge again asked Robertson if he wanted her to accept his plea in the two cases, and he stated "yes, ma'am." *Id.* at 25, PageID.318.

At sentencing, when Robertson was asked if he wished to make a statement, he and the judge had the following exchange:

> MR. ROBERTSON: Like I was telling you the last time I came to court, I just didn't know how to present it at first, but now I do. I feel like before we get to this that I was trying to tell you that I felt like it was a conflict of interest in my case with Mr. Parker. I ain't saying that I'm not going to take this sentence, this plea. I feel like the breakdown in my communication with him — because every time he came and seen me, it was always what the prosecutor was going to do, the prosecutor this, the prosecutor that. He never told me what we were going to do. He never came up with a plan to go to trial to beat this. Because I'm not going to lie, I can't tell you that I'm innocent, because I'm scared to go to trial. I ain't never been through it before, so I don't want to go, I took the plea. Because I felt like if I went to trial and lost my life would have been gone for nothing. So that's the only reason why I took the plea. I'm not going to give it back, because I do not want — I ain't trying to go through this. I'm trying to get it over with so that I go back home and be with my family, that's it.
>
> THE COURT: Well, all those thoughts go into your decision as to whether or not to plead guilty, which we went through at your guilty plea. I asked you all those questions. Those are the things that people weigh when deciding whether or not to take a plea agreement. That's exactly the considerations that people like you and, you know, defendants that are here on multiple cases decide, that's exactly what you do. And you did that, and you had able counsel. Mr. Parker is one of the most experienced lawyers in the building. And you did plead guilty. So I appreciate your comments.
>
> MR. ROBERTSON: And another thing is. I know you can't use the test in court, but this is my life. I could have — there ain't no way I could prove that I'm innocent without him helping me. And that's what I felt like he wasn't trying to do, he wasn't trying to help me. So I said something about a polygraph test. He comes to me and tells me that you said no. But this is my life on the line. What if that was the only way to prove that I was innocent and you all locking up the wrong person?
>
> THE COURT: Well, we're past that now.

> MR. ROBERTSON: I know, when I first got locked up he told me no, that you said no.

Sentencing Tr. at 7-9, ECF No. 10-9. PageID.327-29.

The prosecutor interjected that Robertson was most likely referring to the fact that his attorney probably explained to him that a polygraph examination would be inadmissible in court. The prosecutor also pointed out Robertson had been involved in five different carjacking cases.

The judge sentenced Robertson in accordance with the plea and sentence agreement.

His conviction and sentence were affirmed on appeal. *People v. Robertson,* No. 322032 (Mich. Ct. App. July 7, 2014); *lv. den.* 497 Mich. 953, 858 N.W.2d 427 (2015).

Robertson now seeks a writ of habeas corpus on the following ground:

> The trial court erred in accepting Petitioner's guilty pleas without an adequate inquiry into the breakdown into his relationship with his court-appointed attorney.

Pet. at 5, ECF No.1, PageID.5.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

The state appellate courts' decisions were rendered in summary orders, not reasoned opinions. Nonetheless, the deference required by the AEDPA stall must be afforded. "Under [*Harrington v. Richter*], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S.

at 99). There is no such indication here. *Compare Ray v. Bauman*, 326 F. Supp. 3d 445, 457-59 (E.D. Mich. 2018). ADEPA deference applies to the adjudication of Robertson's claim.

A.

The warden argues that the petition should be dismissed because Robertson did not exhaust his claim. Section 2254 requires state prisoners to "fairly present" their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *McMeans v. Brigano*, 228 F.3d 674, 680-81 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review to a state supreme court. *O'Sullivan*, 526 U.S. at 845. A prisoner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Prather v. Rees*, 822 F.2d 1418, 1420 (6th Cir. 1987) (holding that "[o]rdinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). A Michigan petitioner must present each ground to both Michigan appellate courts before seeking federal habeas corpus relief. *See Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002).

It appears that Robertson satisfied this requirement. He raised the issue in his direct appeal to the Michigan Court of Appeals (in his application for leave to appeal and in a motion to remand), and then asserted it again, although using different phraseology, in his application for leave to

appeal he submitted to the Michigan Supreme Court. "[G]iven the less stringent standards and active interpretation that are afforded to the filings of *pro se* litigants," see *Caver v. Straub,* 349 F.3d 340, 347 (6th Cir. 2003), it is fair to say that Robertson "made a reasonable attempt" to fairly present his claim to the Michigan Supreme Court.

But even if he did not exhaust his claim properly, the Court still may adjudicate the petition. Robertson's claim does not warrant habeas relief, and the Court may deny a petition despite a petitioner's failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2).

B.

Robertson is not entitled to relief on his claim for several reasons.

First, his complaints about his attorney were waived by his plea of guilty. An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Pre-plea claims of ineffective assistance of trial counsel are considered nonjurisdictional defects that are waived by a guilty plea. *See United States v. Stiger,* 20 F. App'x 307, 309 (6th Cir. 2001). Even if Robertson's complaints could be construed as a motion for substitute counsel, his guilty plea would likewise waive any pre-plea motions to substitute counsel. *See, e.g.*, *United States v. Foreman*, 329 F.3d 1037, 1038 (9th Cir. 2003); *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 949 (9th Cir. 2007) (en banc).

Second, Robertson has not identified, and the Court has not found, controlling Supreme Court precedent that clearly establishes federal law governing the extent of the inquiry a court must make when confronted with a criminal defendant's dissatisfaction with his attorney. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing the issuance of a writ of habeas

corpus because the inquiry requirement was not clearly established in federal law). The Supreme Court has acknowledged that "the adequacy of the district court's inquiry into the defendant's complaint" is a factor to consider when determining whether a court properly denied a motion for substitution of counsel. *Martel v. Clair*, 565 U.S. 648, 663 (2012). And the Court has stated that "courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer." *Id.* at 664. But Robertson never actually asked for a new lawyer at the hearing. He simply expressed his dissatisfaction with his then-attorney when the trial judge posed the question at the guilty plea hearing. The trial court's inquiry certainly could have been more prolonged and less perfunctory, but the judge's questions went to the heart of the matter: did Robertson want to plead guilty with his current lawyer or not? Robertson ended the conversation at the plea hearing when he responded, "I'll plead." Hrg. Tr. at 18, ECF No. 10-8, PageID.311.

Although Robertson now contends that he did not articulate his complaints against counsel sufficiently at the plea hearing, the judge did not prevent him from doing so. Contrary to his allegation, the judge did not put any limits on his opportunity to voice any complaints that he had about his attorney. She even advised him that he was not required to plead guilty if he did not want to. The Sixth Circuit has found that a court's inquiry into a complaint about representation is "adequate" when "it allowed all of the interested parties to present their respective evidence and arguments" concerning any possible breakdown between a defendant and his attorney. *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004). The colloquies at the plea and sentencing hearings served that purpose.

Third, the Supreme Court has held that with motions for substitution of counsel, trial courts' decisions "deserve[] deference," and may be overturned "only for abuse of discretion."

*Martel*, 565 U.S. at 664. When combined with the added deference required by AEDPA, those decisions are even more difficult to assail. *See Harrington*, 562 U.S. at 105 (observing that in the context of claims of ineffective assistance of counsel, "[t]he standards created by *Strickland* [*v. Washington*, 466 U.S. 688 (1984)] and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so"). Here, the judge was able to get the flavor of Robertson's dissatisfaction with his lawyer at the plea hearing, and she heard a more fulsome rendition of his complaints at the sentencing hearing. But again, Robertson did not present a motion to substitute his attorney, and the trial judge maintained proper focus on the critical task of ensuring that Robertson's guilty plea was voluntary, even though he was not satisfied with his lawyer.

Fourth, Robertson's dissatisfaction with his lawyer stemmed from a disagreement over strategy. The record shows that he wrote to the court on two occasions while the case was pending complaining that his lawyer did not come to see him, but then also stating that when he talked to the lawyer, his attorney "cut him off." At the sentencing hearing, Robertson made reference to a polygraph test he wanted to take, but he believed that the court would not allow it, apparently misunderstanding the information that the results would not be admissible in evidence. As a general matter, a criminal defendant is not entitled to substitute counsel where his complaints against counsel involved differences of opinion rather than any irreconcilable conflict or total lack of communication. *See e.g. United States v. Marrero,* 651 F.3d 453, 466 (6th Cir. 2011) (noting that "a defendant's 'dissatisfaction with the responses he got from his lawyer, not with the lack of opportunity or his inability to talk to his lawyer or contact his lawyer,' does not establish a total lack of communication") (quoting *Saldivar-Trujillo*, 380 F.3d at 278). The record in this case does not demonstrate that the disagreements between Robertson and his attorney rose to the level of a

conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Fifth, the record does not support the contention that the trial court violated federal constitutional norms when it accepted Robertson's guilty pleas. The Supreme Court has said that a guilty plea involves a waiver of several constitutional rights. *See Boykin v. Alabama,* 395 U.S. 238, 243 (1969). The only question on collateral review of a guilty plea, however, is whether the plea was counseled and voluntary. *United States v. Broce*, 488 U.S. 563, 569 (1989).

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A guilty plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645, n.13 (1976). A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Nonetheless, "a [guilty] plea may be involuntary if the defendant did not understand what he was giving up and receiving in entering his guilty plea." *United States v. Lang*, 46 F. App'x 816, 818 (6th Cir. 2002) (citing *United States v. Toothman,* 137 F.3d 1393, 1400 (9th Cir. 1998), and *Hammond v. United States,* 528 F.2d 15, 18 (4th Cir. 1975)).

The record in this case establishes that Robertson's guilty pleas were knowing and voluntary. He was advised of the maximum penalties of the crimes that he was admitting, as well as the rights that he would be giving up by pleading guilty. The terms of the plea agreement were placed on the record. Robertson acknowledged several times that he was pleading guilty freely and voluntarily and that no threats or coercion had been made to get him to plead guilty. And he

received an advantageous plea bargain, in which the prosecutor agreed to dismiss three other carjacking cases against him and agreed that the sentences for the two carjacking charges to which he pleaded guilty would run concurrently with each other and with the sentences that Robertson received on the armed robbery and felonious assault charges. Under Michigan law, the judge had the option of imposing sentences for each of the carjacking charges that could run consecutively to each other and to the other felony counts as well. *See* Mich. Comp. Laws § 750.529a(3). The plea agreement in this case limited Robertson's minimum sentence exposure on the carjacking and armed robbery charges to nine years.

Moreover, a court's failure to substitute counsel does not, by itself, render a plea of guilty involuntary, particularly where there are no facts on the record that suggest that the plea was involuntary. *See Foreman,* 329 F.3d at 1039. A breakdown in communication between a defendant and his attorney over the advisability of accepting a plea bargain likewise does not invalidate an otherwise voluntary plea. *See United States v. Mitchell*, 633 F.3d 997, 1001-02 (10th Cir. 2011). There is no indication that Robertson's guilty plea was involuntary or coerced. Therefore, any alleged breakdown in communication between him and his attorney would not otherwise invalidate his plea. *Ibid.*; *see also United States v. Blanco-Gaspita,* 48 F. App'x 998, 999 (6th Cir. 2002) (holding that the trial court's failure to appoint substitute counsel for defendant did not render the plea involuntary, where the plea transcript revealed that the defendant was fully informed of his rights, acknowledged that he wished to plead guilty after having adequate time to confer with counsel, and denied that any threats had been made to induce him to plead guilty).

III.

The state court record in this case demonstrates that the petitioner's guilty pleas were knowingly and voluntarily made. The state courts' decisions were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: July 18, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 18, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI